11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Vecentie Morales, Jr.

Appellant

Vs.                   Nos. 11-03-00087-CR & 11-03-00088-CR B Appeals from Palo Pinto County

State
of Texas

Appellee

 

Following a joint trial for the aggravated
assaults[1]
of two public servants, the jury convicted Vecentie
Morales, Jr. of both offenses. During a recess before the punishment phase of
trial, appellant withdrew his request for the jury to assess punishment and
agreed to submit the punishment issue to the court (with the understanding that
the State would recommend 27 years confinement in each case).  The court assessed punishment at 27 years
confinement in each case and gave permission for appellant to appeal.  We affirm the convictions.

                                                                   The
Indictments

The two indictments are identical, except for the
names and occupations of the complainants. 
The  indictments charged that, on
or about June 21, 2002, appellant did “then and there intentionally or
knowingly threaten” each of the complainants with imminent bodily injury; that
appellant “did then and there use or exhibit a deadly weapon, to-wit: a
firearm,” during the commission of each offense; and that appellant then knew
that each complainant was a “public servant” who was “lawfully discharging an
official duty.”








One indictment (No. 12094 in
the 29th District Court of Palo Pinto County and No. 11-03-00087-CR in this
court) involved the aggravated assault of Michael Craig Goen,
a lake ranger for the Brazos River Authority. The other indictment (No. 12095
in the 29th District Court of Palo Pinto County and No. 11-03-00088-CR in this
court) involved the aggravated assault of Tommy Shawver,
a deputy sheriff for Palo Pinto County.  


                                                                  Issues
for Review

Appellant filed a joint
brief for both appeals, arguing in Issue No. 1 that there was “insufficient
evidence to convict” him for the aggravated assault of either the lake ranger
or the deputy sheriff.  Appellant argues
in his other issues that the trial court erred: 
(Issue No. 2) in allowing the State to question appellant about whether
he intended to call a certain witness; (Issue No. 3) in allowing one of the
State’s witnesses to “bolster” the testimony of the two complainants; (Issue
No. 4) in allowing testimony as to “extraneous offenses”; and (Issue No. 5) in
refusing a requested jury charge.

                                                        Testimony
by Deputy Shawver

Tommy Shawver
testified that he was currently employed by the Graham Police Department and
that he had been a deputy with the Palo Pinto County Sheriff’s Department on
June 21, 2002.  Deputy Shawver testified that he received a call from the Chief
Lake Ranger for Possum Kingdom Lake at about 11:00 a.m. and that he went to the
Bluff Creek Marina at Sportsman=s
World.  Deputy Johnny McKee arrived a few
minutes later.  

Deputy Shawver
identified appellant and said that, when he told appellant that he “needed to
talk to him,” appellant got into his pickup and locked the door.  Appellant did not comply with an instruction
to get out of his vehicle; appellant put the pickup “in drive and went forward”
while the deputy was standing there. 
Deputy Shawver testified that he “back peddled
pretty fast” and that appellant’s pickup struck Deputy McKee’s car as appellant
drove between the deputy’s car and the gate post.  Deputy McKee got into his car and chased
appellant until appellant “wrecked out” his pickup and his trailer (which was
carrying two Sea-Doo jet skis). 

Appellant had a gun in his hand when he left the
scene of the wreck.  Deputy Shawver and several other officers tried to secure the
perimeter and conduct a search for appellant. 
When they received information that appellant was near the Roy Davis
residence, Deputy Shawver and Lake Ranger David
Carlyle “ran up there on foot.” Deputy Shawver
testified about appellant’s threat[2]
when they came into contact with him while they were about 15 feet apart; his
testimony reads as shown:

Q: Okay. 
What happened?

 

A: He was telling me to stay right there.  At that time he was pointing his gun at
me, telling me to stay right there.   (Emphasis added)

 

Deputy Shawver
also testified that he was wearing his sheriff’s department uniform; that there
were several other deputies and lake rangers involved in appellant=s arrest; and that, at the time that
appellant pointed the gun at him, he was in fear for his life. 

                                                          Testimony
by Ranger Goen

Michael Craig Goen testified that he was a lake ranger for the Brazos
River Authority and a certified peace officer under the laws of this
State.  Lake Ranger Goen
identified appellant and testified about the events on June 21, 2002.  Relevant portions of his testimony read as
shown:

Q: Okay. 
And what happened when you came in contact with [appellant] again the
second time?

 

A: I was standing behind a cedar tree in a wooded
area and had my pistol drawn.  And as he
approached, I ordered him to drop his weapon and get on the ground.

 

Q: Did he comply with your order?

 

A: No, sir.

 

Q: What did he do?

 

A: He pulled the pistol away from his head and pointed
it at me, and said, “Get the f - - k 
back.  Get the f - - k back.”  (Emphasis added)

 








Lake Ranger Goen
testified that he was “looking straight down the barrel” of appellant’s gun and
that he was “threatened with imminent bodily injury.”  Lake Ranger Goen
testified that he was attempting to discharge an official duty, that he was
dressed in his uniform, and that he had 
his badge displayed.  Lake Ranger Goen also testified that he would have shot appellant, if
Deputy Shawver had not walked between them, because
appellant threatened him with a gun.   

                                                 Testimony
by State’s Other Witnesses

Four other witnesses were called by the State to
testify about various aspects of the search and arrest on June 21, 2002.  They were Johnny McKee, a certified peace
officer who was a reserve deputy sheriff for Palo Pinto County; David Carlyle,
a certified peace officer who was a lake ranger for the Brazos River Authority;
Robert Box, a certified peace officer who was a lake ranger for the Brazos
River Authority; and James N. Oakerson, chief deputy
sheriff for Palo Pinto County.

                                                             Appellant=s Testimony   

The record shows that, while the jury was outside
the courtroom at the end of the State’s case-in-chief, appellant told the court
that he wanted to tell the jury “what happened that day” and to give the jury
his “side of the story.”  The record is
clear that appellant insisted upon testifying, against the advice of his
court-appointed lawyer and after careful admonishments by the trial court.  After
the jury returned, appellant testified that he was 30 years old and that he had
graduated from high school in 1991. 
Appellant told the jury that he had been in custody since his arrest on
June 21, 2002.  On that morning he was at
the Bluff Creek Marina when two officers arrived.  Appellant testified that he was “scared” when
he saw the officers because he was “on probation out of Oklahoma.”  Appellant admitted that he tried to evade
arrest, but he testified that the officer was not in front of his vehicle when
appellant was pulling out of the marina. 
Appellant agreed that he was reckless, but he said that he did not ever
intend to run over anyone.  Appellant’s
testimony about his conduct after the wreck reads as shown:

Q: Okay. 
What were you intending to do at that point when you were inside your
truck?  What were you intending to do?

 

A: At that point...I just wanted to kill
myself.  

 

                                                            *   *   *

 

Q: Did you ever point a gun at any officers out
there?

 

A: No, I did not.

 








Q: Did you ever point a cell phone at any of the officers?

 

A: Yes, I did.  (Emphasis
added)

 

                                   Issue
No. 1 - Sufficiency of the Evidence

This court has reviewed all of the evidence
pursuant to Jackson v. Virginia, 443 U.S. 307, 319 (1979), and Jackson
v. State, 17 S.W.3d 664, 669 (Tex.Cr.App.2000).  The evidence is sufficient to support the
jury=s finding
that appellant intentionally and knowingly threatened both officers with
imminent bodily injury when he pointed his gun at them.  Further, the evidence which supports the
verdict is not Agreatly
outweighed@ by proof
to the contrary.  The jury had the right
to believe all or any part of the testimony of any of the witnesses.  See, e.g., TEX. CODE CRIM. PRO. ANN.
art 36.13 (Vernon 1981).  Issue No. 1 is
overruled.        

                               Issue
No. 2 - Cross-Examination of Appellant

Appellant=s
brief refers to the State=s
cross-examination of appellant about whether Roy Whisenhunt
was Agoing to
come down here and clear all this up about that being his gun.@ 
The record shows that no objection was made to the State=s question; consequently, the complaint
has not been preserved for appellate review. 
See TEX.R.EVID. 103(a)(1) and TEX.R.APP.P. 33.1.  Issue No. 2 is overruled.

                       Issue
No. 3 - Allowing a Witness to ABolster@ Testimony

Appellant=s
brief refers to testimony by Chief Deputy Oakerson
that he knew Lake Ranger Goen and Deputy Shawver and that they were Atrustworthy
and credible.@  The trial court sustained appellant=s objection to that testimony.  There was no motion to strike the testimony;
consequently, the complaint has not been preserved for appellate review.  See Rule 103(a)(1) and Rule 33.1.  Issue No. 3 is overruled.

                        Issue
No. 4 - Claim of “Extraneous Offense” Testimony

Appellant argues that the trial court “erred in allowing
testimony as to extraneous offenses,” and his brief refers to this portion of
his testimony during cross-examination:

Q: [Y]ou just decided you might be
better off keeping the gun in your [pickup]?

 

A: No, the gun wasn’t mine, sir.

 








Q: Well, you thought you might have a use for that gun, so it
might be handy to have [it] there next to you?

 

A: No.

 

Q: You knew that gun was in your [pickup] when you left that
morning, didn’t you?

 

A: Yes, I did....I knew I didn’t take it out.

 

                                                           *    *   
*

 

Q: You knew it was against the law for you to carry a hand
gun...because you were a felon from Oklahoma, didn’t you?

 

A: Yes, sir.

 

                                                           *    *   
*

 

Q: I’ll show you State’s Exhibit No. 13 [the ammunition] and ask
you where you kept this in your [pickup]? 
Where were you keeping that in your [pickup]?

 

A: Stayed in the same [red bag that had the gun and holster].

 

Q: Okay.  And you knew that
was in there, didn’t you?

 

A: Uh-huh.

 

Q: What’s Roy’s name?

 

A: Whisenhunt [this was the potential
witness who was discussed in connection with Issue No. 2].

 

[PROSECUTOR]: We’ll offer State’s Exhibit 13 [the ammunition].

 

[DEFENSE COUNSEL]: Your Honor, I would just ask for a limiting
instruction on what the jury can consider that for.  I mean, he didn’t carry it around with him,
it was found in the car.

 

THE COURT: Well, what do you want me to limit it to?

 








[DEFENSE COUNSEL]: I want to limit that to - - that it wasn’t
used in the alleged commission of anything, it was found in the car.  They can consider it for that evidence.

 

THE COURT: Well, I’ll deny the request for the limiting
instruction.  And State’s Exhibit 13 is
admitted into evidence.

 

Appellant cites Lockhart v. State, 847
S.W.2d 568, 571 (Tex.Cr.App.1992).  We
note that the opinion in Lockhart notes that evidence of offenses which
are indivisibly connected to the charged offense are admissible to “explain the
context of the offense” for which appellant was being tried.  The trial court did not err in allowing this
testimony or by overruling the request for a “limiting instruction.”  Further, any theoretical error “must be
disregarded” under TEX.R.APP.P. 44.2(b). 
Issue No. 4 is overruled.

                                      Issue
No. 5 - Requested Jury Charge

After the evidence was closed, the trial court
gave its proposed charges in both cases to the attorneys of record and asked if
there were any objections to the charges or requests for additional
instructions.  Appellant’s trial counsel
asked for “a lesser included charge on deadly conduct” and also on “evading
arrest or detention.”  The trial court=s ruling reads as shown:

THE COURT: All right.  The
Court will consider such requests for additional instructions to have been
timely made....And they are hereby denied.

 

In ruling on the requests, specifically, the [TEX. PENAL CODE ' 22.05(a) (Vernon 2003) “Deadly Conduct”]
request, I’ll just state that the predominant factor in the Court’s
consideration about whether to submit that is...the defendant’s testimony
itself. [The trial court also pointed out that evading arrest is not a lesser
included offense of aggravated assault on a public servant.]

 

The trial court did not err in refusing the
requested charges.  The evidence would
not permit the jury to “rationally find” that appellant was “guilty only of the
lesser offense.”  Rousseau v. State, 855
S.W.2d 666, 673 (Tex.Cr.App.), cert. den’d, 510 U.S. 919 (1993). If the jury had believed
appellant=s
testimony that he did not point his gun at the officers, he would not have been
guilty of either “deadly conduct” or “aggravated assault.”  Issue No. 5 is overruled. 








                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.         

 

BOB DICKENSON

SENIOR JUSTICE

 

April 22, 2004 

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Wright, J., and

McCall,
J., and Dickenson, S.J.[3]











[1]TEX. PENAL CODE ANN. ' 22.02(a)
(Vernon Supp. 2004) provides that a person commits the offense of Aaggravated assault@ if he or
she Auses or exhibits a deadly weapon@ during the commission of an assault.  TEX. PENAL CODE ANN. ' 22.02(b) (Vernon Supp. 2004) provides that the offense
is a felony of the first degree if the assault is committed against a public
servant who is lawfully discharging an official duty. 





[2]TEX. PENAL  CODE
ANN. ' 22.01(a)(2) (Vernon Supp. 2004) provides that a person
commits the offense of Aassault@ if he or she Aintentionally
or knowingly threatens another with imminent bodily injury.@





[3]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.